IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, <br><br> Plaintiff, <br> v. <br><br> LEWIS PRODUCE MARKET NO. 2 INC, LEWIS PRODUCE MARKET, INC., and OSCAR ABUNDES, <br><br> Defendants. | Civil Action No. |

**COMPLAINT FOR DECLARATORY JUDGMENT**

NOW COMES the Plaintiff, PHILADELPHIA INDEMNITY INSURANCE COMPANY, by and through its counsel, and for its Complaint for Declaratory Judgment against Defendants, LEWIS PRODUCE MARKET NO. 2 INC, LEWIS PRODUCE MARKET, INC., and OSCAR ABUNDES states as follows:

**INTRODUCTION**

1. This is a declaratory judgment action wherein PHILADELPHIA INDEMNITY INSURANCE COMPANY ("**Philadelphia**") seeks a declaration that it has no duty to defend, to advance defense costs or to indemnify the Defendants herein in connection with the lawsuit captioned *Oscar Abundes, individually and on behalf of all others similarly situated v. Lewis Produce Market, Inc.*, Case Number 2021-CH-00000042 filed on February 1, 2021 in the Circuit Court of Lake County, Illinois, Chancery Division (the "***Abundes* Lawsuit**").

2. Plaintiff PHILADELPHIA is a Pennsylvania corporation with its principal place of business in Pennsylvania.

3. Defendant LEWIS PRODUCE MARKET NO. 2 INC ("**Market No. 2**") is an Illinois corporation with its principal place of business in Waukegan, Illinois.

4. Upon information and belief, defendant LEWIS PRODUCE MARKET, INC. ("**Lewis Inc.**") is an Illinois corporation with its principal place of business in Waukegan, Illinois.

5. Upon information and belief, Defendant OSCAR ABUNDES ("**Abundes**") is an Illinois citizen who resides within the jurisdiction of the Northern District of Illinois. As the named plaintiff in the *Abundes* Lawsuit, Abundes is a necessary party to the relief sought herein and is named as a party solely in order to secure an adjudication binding upon him and others similarly situated for whom he is seeking relief in the *Abundes* Lawsuit with regard to the matters alleged herein.

6. Pursuant to 28 U.S.C. § 1332(a), this Court has subject matter jurisdiction over this dispute because there is complete diversity between the plaintiff and the defendants herein, and the amount at issue exceeds $75,000, exclusive interest and costs.

7. Further, pursuant to 28 U.S.C. § 1391, venue is proper in this District because the defendants are doing business in this District, and this matter arises out of the *Abundes* Lawsuit which is pending in this District.

**BACKGROUND STATEMENT OF FACTS**

8. Philadelphia issued a claims-made Private Company Protection Plus Insurance Policy No. PHSD1519358, to Market No. 2 with a Policy Period of February 2, 2020 to February 2, 2021 (the "**2020 Policy**"). A true and correct copy of the 2020 Policy with premium information redacted is attached hereto as Exhibit A.

9. Philadelphia issued a claims-made Private Company Protection Plus Insurance Policy No. PHSD1608469, to Market No. 2 with a Policy Period of February 2, 2021 to February 2, 2022 (the "**2021 Policy**") (collectively with the 2020 Policy, the "**Policies**"). A true and correct copy of the 2021 Policy with premium information redacted is attached hereto as Exhibit B.

10. On July 19, 2021, Philadelphia (through counsel) issued a letter to a representative

of both Lewis Inc. and Market No. 2 setting forth its position that there was no coverage for the *Abundes* Lawsuit under the Policies. A true and correct copy of the letter from Philadelphia's counsel, with redactions out of an abundance of caution to preserve attorney client privilege, is attached as Exhibit C.

### The *Abundes* Lawsuit

11. The Complaint filed in the *Abundes* Lawsuit on February 1, 2021 against Lewis Inc. does not name Market No. 2 as a defendant. A true and correct copy of the original complaint filed in the *Abundes* Lawsuit (the "**Complaint**") is attached as Exhibit D.

12. In the Complaint Abundes alleged that he was "employed by the Defendant at one of its facilities in Waukegan, Illinois" from approximately October 2019 to December 2019, and further alleged that he was required to provide biometric scans to Lewis Inc. each time he clocked in and out of a shift.

13. The Complaint asserted that Lewis Inc. collected and used the biometrics of Plaintiff and the other class members in order to track their time at work, but failed to comply with BIPA's mandates regarding the retention and destruction of biometric data.

14. The Complaint contains a sole cause of action seeking to establish Lewis Inc.'s liability for the alleged violation of the Illinois Biometric Information Privacy Act, 740 ILCS § 14/1, *et seq*. ("**BIPA**").

15. The Complaint sought to certify a class defined as "[a]ll individuals whose biometrics were captured, collected, stored, used, transmitted, or disseminated by or on behalf of Defendant within the state of Illinois at any time within the applicable limitations period."

16. On behalf of himself individually and the Class, in his Complaint Abundes sought: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Abundes and the Class by requiring Lewis Inc. to comply with BIPA; (3) statutory damages of

$5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS §14/20(2); (4) statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS § 14/20(1); and (5) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3); (6) pre-judgment and post-judgment interest.

17. A First Amended Complaint was filed in the *Abundes* Lawsuit on May 14, 2021 against Lewis Inc. and did not name Market No. 2 as a defendant. A true and correct copy of the first amended complaint filed in the *Abundes* Lawsuit (the "**First Amended Complaint**") is attached as Exhibit E.

18. The First Amended Complaint asserted many of the same factual allegations as the Complaint but: (1) does not include allegations regarding the Defendant's failure to obtain written releases or informed consent from the Plaintiffs; and (2) Abundes now alleges that his "employment with Defendant ended in 2014."

19. The First Amended Complaint alleged that Lewis Inc. "collected and used the biometrics of Plaintiff and other Class members in order to track their time at work."

20. The First Amended Complaint alleged that Lewis Inc. violated Section 15(a) of BIPA by failing to: (a) establish a publicly available retention schedule detailing the length of time for which the biometrics are stored and/or guidelines for permanently destroying the biometrics; and (b) destroy Plaintiff's and the other Class members' biometrics within three years of Plaintiff's and other Class members' termination dates.

21. The First Amended Complaint further seeks to certify a class defined as "[a]ll individuals whose biometrics were possessed by Defendant within the state of Illinois at any time within the applicable limitations period."

22. In the First Amended Complaint Abundes individually and the Class sought: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of

Plaintiff and the Class by requiring Lewis Inc. to comply with BIPA; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS §14/20(2); (4) statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS § 14/20(1); and (5) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3); (6) pre-judgment and post-judgment interest.

23. A Second Amended Complaint was filed in the *Abundes* Lawsuit on July 16, 2021 which named Market No. 2 as the only defendant. A true and correct copy of the second amended complaint filed in the *Abundes* Lawsuit (the "**Second Amended Complaint**") is attached as Exhibit F.

24. The Second Amended Complaint asserts many of the same factual allegations as the Complaint and First Amended Complaint, but is directed against Market No. 2 rather than Lewis Inc.

25. The Second Amended Complaint alleges that Market No. 2 "collected and used the biometrics of Plaintiff and other Class members in order to track their time at work but failed to comply with BIPA's mandates regarding the retention and destruction of biometric data."

26. The Second Amended Complaint alleges that Market No. 2. violated Section 15(a) of BIPA by failing to: (a) develop a publicly available biometric retention and destruction policy; and (b) destroy Plaintiff's and the other Class members' biometrics within three years of Plaintiff's and other Class members' termination dates.

27. The Second Amended Complaint further seeks to certify a class defined as "[a]ll individuals whose biometrics were possessed by Defendant within the state of Illinois at any time within the applicable limitations period."

28. In the Second Amended Complaint Abundes individually and the Class seeks: (1) certification of the class and appointment of Abundes as class representative and his counsel as

class counsel; (2) a declaration that Market No. 2's conduct violates BIPA; (3) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Market No. 2 to comply with BIPA; (4) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS §14/20(2); (5) statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS § 14/20(1); (6) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3); (7) pre-judgment and post-judgment interest; and (8) such further and other relief as the Court deems just and equitable.

### The Policies

29. The 2020 Policy incepted on February 2, 2020 and expired on February 2, 2021.

30. The 2021 Policy incepted on February 2, 2021 and expires on February 2, 2022.

31. The Policies were issued to "Lewis Produce Market No. 2 Inc" which is the entity identified as the "Named Insured" on the Policies' Declarations.

32. Of the Coverage Parts provided in the Private Company Protection Plus form, Market No. 2 purchased coverage solely under Part 2, the Employment Practices Liability Insurance (the "**EPL Insurance**").

33. The Policies each provide a $500,000 Limit of Liability for all Loss on account of all Claims for each Policy Period under Part 2, the EPL Insurance, as modified by the INCREASE LIMIT OF LIABILITY AMENDATORY ENDORSEMENT, PI-PRD-39 (09/02).

34. Each of the Policies is subject to a $25,000 Retention for each claim.

**COUNT I - DECLARATORY JUDGMENT UNDER 28 USC § 1331**

**LEWIS INC. IS NOT AN "INSURED" UNDER THE POLICIES AND THE COMPLAINT AND FIRST AMENDED COMPLAINT IN THE *ABUNDES* LAWSUIT DO NOT CONSTITUTE A "CLAIM" UNDER THE POLICIES**

35. Philadelphia repeats and realleges Paragraphs 1 to 34 as paragraph 35 as if set forth fully herein.

36. Under Part 4, COMMON POLICY DEFINITIONS, Item H., the Policies define "Insured" to mean "the Private Company and Individual Insured," and under Part 4., Item L., the Policy defines "Private Company," in pertinent part to mean "1. The Named Corporation, and 2. Any Subsidiary."

37. The term "Named Corporation" is defined under Part 4, Item K. of the Policies to mean "the first entity named in Item 1 of the Declarations Page."

38. The first entity named under the Policies' Declarations Page is "Lewis Produce Market No. 2 Inc".

39. Under Part 4, COMMON POLICY DEFINITIONS, Section H., as amended by the Private Company Enhancement Endorsement (PI-PRD 126 (04/19)) (the "**PC Endorsement**"), the Policies define "Subsidiary" to mean:

   1. any entity other than a partnership or joint venture of which the Named Corporation owns on or before the inception of the Policy Period more than 50% of the issued and outstanding voting stock either directly, or indirectly through one or more of its Subsidiaries or the right to elect, appoint or designate more than 50% of such entity's board of directors, trustees, or managers and which is set forth in the Application;

   2. any entity other than a partnership or joint venture which becomes a Subsidiary during the Policy Period and whose assets total less than 40% of the total consolidated assets of the Named Corporation as of the inception date of this Policy Period;

   3. any entity other than a partnership or joint venture which becomes a Subsidiary during the Policy Period other than a corporation described in paragraph 2. above, but only upon the condition that within 90 days of its becoming a Subsidiary, the Named Corporation shall have provided the Underwriter with full particulars of the new Subsidiary and agreed to any additional premium and/or amendment of the provisions of this Policy required by the Underwriter relating to such new Subsidiary. Further, coverage as shall be afforded to the new Subsidiary is conditioned upon the Named Corporation paying when due any additional premium required by the Underwriter relating to such new Subsidiary.

      Any entity other than a partnership or joint venture becomes a Subsidiary when the Named Corporation owns more than 50% of the issued and

outstanding voting stock, either directly, or indirectly through one or more of its Subsidiaries. An entity ceases to be a Subsidiary when the Named Corporation ceases to own more than 50% of the issued and outstanding voting stock, either directly, or indirectly through one or more of its Subsidiaries. Coverage for Claims made against any Subsidiary or the Individual Insureds of any Subsidiary shall only apply to Wrongful Acts of such Subsidiary or the Individual Insureds of such Subsidiary occurring after the effective time that such Subsidiary became a Subsidiary. If before or during the Policy Period an entity ceases to be a Subsidiary, then coverage for such Subsidiary shall remain in force, but only for Claims made during the Policy Period for Wrongful Acts occurring prior to the time that such Subsidiary ceased to be a Subsidiary.

40. Lewis Inc. is not the "Named Corporation" nor is it a "Subsidiary" of Market No. 2.

41. As Lewis Inc. is neither the "first entity named in Item 1 of the Declarations Page"; nor does it constitute a "Subsidiary" as defined by the Policies, Lewis Inc. is not an "Insured" under the Policies.

42. Under Part 4, COMMON POLICY DEFINITIONS, Item B., as amended by the PC Endorsement, the Policies define "Claim," in pertinent part, to mean:

1. a written demand for monetary or non-monetary relief;

2. a judicial or civil proceeding commenced by the service of a complaint or similar pleading;

3. a criminal proceeding commenced by a return of an indictment;

4. a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigation order or similar document, including, but not limited to, proceedings before the Equal Employment Opportunity Commission or any similar governmental agency;

5. an arbitration or mediation or other alternative dispute resolution proceeding if the Insured is obligated to participate in such proceeding or if the Insured agrees to participate in such proceeding, with the Underwriter's written consent, such consent not to be unreasonably withheld;

6. solely with respect to Part 3 (Fiduciary Liability Insurance), a written notice of commencement of an investigation by the Department of Labor or the Pension Benefit Guaranty Corporation;

against an Insured for a Wrongful Act, including any appeal therefrom; or

7. a written request received by an Insured to toll or waive a statute of limitations, relating to a potential Claim as described above.

However, Claim shall not include a labor or grievance proceeding pursuant to a collective bargaining agreement.

A claim shall be considered made when an Insured first receives notice of the Claim.

43. Under Part 4, COMMON POLICY DEFINITIONS, Item B., as amended by the PC Endorsement, DEFINITION OF CLAIM BROADENED TO INCLUDED EXTRADITION AND SUBPOENA, "Claim" is amended to further include the following:

8. an official request for Extradition;

9. solely when used in reference to the coverage provided by INSURING AGREEMENT A., INDIVIDUAL LIABILITY COVERAGE, any service of a subpoena or similar written request upon an Individual Insured compelling witness testimony or document production in connection with the matters described Paragraphs B 1. through B. 8 above or with any equivalent action against a Private Company or Outside Entity, in which case, the Underwriter will pay the Defense Costs incurred solely by such Individual Insured in responding to such subpoena or written request.

44. As noted above, in order to constitute a Claim, "a written demand for monetary or non-monetary relief" and "a judicial or civil proceeding commenced by the service of a complaint or similar pleading" must be "against an Insured for a Wrongful Act[.]"

45. The Complaint and the First Amended Complaint in the *Abundes* Lawsuit name as a defendant only Lewis Inc., and not an Insured.

46. Therefore, neither the Complaint nor the First Amended Complaint in the *Abundes* Lawsuit constitute a Claim under the Policies.

47. In addition, under Part 2, the EPL Insurance, Section I., INSURING AGREEMENT, the Policy provides that "[t]he Underwriter shall pay on behalf of the Insured, Loss from Claims made against the Insured during the Policy Period (or, if applicable, the

Extended Reporting Period), and reported to the Underwriter pursuant to the terms of this Policy, for an Employment Practice Act."

48. As noted above, the Complaint and the First Amended Complaint in the *Abundes* Lawsuit do not constitute a Claim under the Policies for an "Employment Practice Act," because the Complaint and the First Amended Complaint in the *Abundes* Lawsuit do not name an Insured as a defendant and therefore are not "made against an Insured . . . ."

49. As a result, coverage is not available under the Policies for the Complaint and the First Amended Complaint filed in the *Abundes* Lawsuit on the grounds that the EPL Insurance's Insuring Agreement, under Part 2, Section I., is not triggered because there is no "Claim[] made against the Insured . . . ."

50. Accordingly, Philadelphia has no duty under the Policies to defend, to advance defense costs or to indemnify any of the Defendants herein in connection with the Complaint and the First Amended Complaint filed in the *Abundes* Lawsuit.

51. Defendants, however, deny that Philadelphia has no duty under the Policies to defend, to advance defense costs or to indemnify any of the Defendants herein in connection with the Complaint and the First Amended Complaint filed in the *Abundes* Lawsuit.

52. An actual controversy exists between the parties and this Court is vested with the power to declare the rights and liabilities of the parties hereto and to give such other and further relief as it deems necessary under the facts and circumstances.

WHEREFORE, Philadelphia Indemnity Insurance Company respectfully requests this Honorable Court to issue an order:

(a) declaring that Philadelphia has no duty under the Policies to defend, to advance Defense Costs or to indemnify Defendants in connection with the Complaint and the First Amended Complaint filed in the *Abundes* Lawsuit; and

(b) awarding Philadelphia such other and further relief as the Court may deem just and proper.

**COUNT II – DECLARATORY JUDGMENT UNDER 28 USC § 1331**

**THE *ABUNDES* LAWSUIT IS NOT A CLAIM MADE DURING THE 2020 POLICY'S POLICY PERIOD NOR DID AN INSURED PROVIDE PIIC WITH A NOTICE OF CIRCUMSTANCES DURING THE 2020 POLICY'S POLICY PERIOD**

53. Philadelphia repeats and realleges Paragraphs 1 to 52 as paragraph 53 as if set forth fully herein.

54. The Policies are both written on a "claims made and reported" basis.

55. The Declarations of the Policies provide in pertinent part:

EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THIS POLICY IS WRITTEN ON A CLAIMS MADE BASIS AND COVERS ONLY THOSE CLAIMS FIRST MADE DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN.

56. In addition, under Part 2, Section I., the INSURING AGREEMENTS, Subsection A., the Policies state, in pertinent part, that coverage is provided for "Loss from Claims made . . . during the Policy Period, (or if applicable, during the Extension Period)."

57. Also, under Part 6, COMMON POLICY CONDITIONS, Section IV. NOTICE/CLAIM REPORTING PROVISIONS, as amended by the PC Endorsemenet, paragraphs A. and B. state:

A. In the event that a Claim is made against the Insured, the Insured shall, as a condition precedent to the obligations of the Underwriter under this Policy, give written notice to the Underwriter as soon as practicable after any of the directors, officers, governors, trustees, management committee members,

11

        or members of the Board of Members first become aware of such Claim, but, not later than 90 days after the expiration date of this Policy, Extension Period, or Run-Off Policy, if applicable.

    B.    If during this Policy Period the CEO, Chairperson of the Board, CFO, or General Counsel first becomes aware of any circumstances which may subsequently give rise to a Claim being made against any Insured for a specific alleged Wrongful Act, and as soon as practicable thereafter, but before the expiration or cancellation of this Policy, gives written notice to the Underwriter of the circumstances and the reasons for anticipating such a Claim, with full particulars as to the Wrongful Act, dates and persons involved, then any Claim which is subsequently made against the Insured arising out of such Wrongful Act will be considered made during this Policy Period.

    58.    As per Part 6, COMMON POLICY CONDITIONS, Section VIII., EXTENSION PERIOD, there is no Extension Period for the 2020 Policy since the 2020 Policy was neither canceled nor was there a non-renewal of the 2020 Policy, as evidenced by the issuance of the 2021 Policy.

    59.    The definition of "Claim" states, in relevant part, that a "claim shall be considered made when an Insured first receives notice of the Claim."

    60.    On February 19, 2021, counsel for Market No. 2 sent an e-mail to Philadelphia stating that "[t]he insured received notice from outside counsel fishing for work" and attached a February 8, 2021 e-mail from Zachary Watters at the Vedder Price firm to Tom Fourkas of Lewis Inc. in which Mr. Watters advised of the *Abundes* Lawsuit.

    61.    On February 23, 2021, counsel for Market No. 2. confirmed in an e-mail to Philadelphia that the February 8, 2021 e-mail from Vedder Price was the "first notice of the claim or potential claim" to Market No. 2.

    62.    As Market No. 2 did not receive notice of the *Abundes* Lawsuit until February 8, 2021, the *Abundes* Lawsuit would in no event be considered a Claim made during the 2020 Policy's Policy Period.

63. In addition, the 2020 Policy's Part 6, COMMON POLICY CONDITIONS, Section IV., NOTICE/CLAIM REPORTING PROVISIONS, as amended by the PC Endorsement, Paragraph 6, AMENDMENTS TO PART 6 - COMMON POLICY DEFINITIONS, Paragraph B. REPORTING ENHANCEMENTS states in relevant part:

> B. If during this Policy Period the CEO, Chairperson of the Board, CFO, or General Counsel first becomes aware of any circumstances which may subsequently give rise to a Claim being made against any Insured for a specific alleged Wrongful Act, and as soon as practicable thereafter, but before the expiration or cancellation of this Policy, gives written notice to the Underwriter of the circumstances and the reasons for anticipating such a Claim, with full particulars as to the Wrongful Act, dates and persons involved, then any Claim which is subsequently made against the Insured arising out of such Wrongful Act will be considered made during this Policy Period.

64. Section IV. B., permits the CEO, Chairperson of the Board, CFO, or General Counsel to provide PIIC with a notice of circumstances during the Policy Period which may subsequently give rise to a Claim being against an Insured for a specific Wrongful Act, such that a Claim subsequently made against the Insured arising out of such Wrongful Act will be considered made during the Policy Period.

65. However, the Market No. 2's CEO, Chairperson of the Board, CFO, or General Counsel did not provide PIIC with a notice of circumstances during the 2020 Policy Period involving the Wrongful Acts, dates and persons asserted in *Abundes* Lawsuit.

66. As no Claim was made during the 2020 Policy Period and as PIIC was not provided with a notice of circumstances during the 2020 Policy Period as described in Section IV. B., there is no coverage under the 2020 Policy for the *Abundes* Lawsuit.

67. Defendants, however, deny that Philadelphia has no duty under the 2020 Policy to defend, to advance defense costs or to indemnify any of the Defendants herein in connection with the *Abundes* Lawsuit.

68. An actual controversy exists between the parties and this Court is vested with the power to declare the rights and liabilities of the parties hereto and to give such other and further relief as it deems necessary under the facts and circumstances.

WHEREFORE, Philadelphia Indemnity Insurance Company respectfully requests this Honorable Court to issue an order:

(a) declaring that Philadelphia has no duty to defend, to advance defense costs or to indemnify any of the defendants in the *Abundes* Lawsuit under the 2020 Policy; and

(b) awarding Philadelphia such other and further relief as the Court may deem just and proper.

## COUNT III – DECLARATORY JUDGMENT UNDER 28 USC § 1331

### COVERAGE FOR THE *ABUNDES* LAWSUIT IS EXCLUDED BY THE 2021 POLICY'S BIOMETRIC EXCLUSION

69. Philadelphia repeats and realleges repeats and realleges Paragraphs 1 to 68 as paragraph 69 as if set forth fully herein.

70. The 2021 Policy, under Part 2, Section III, EXCLUSIONS, as amended by the BIOMETRIC INFORMATION CLAIM EXCLUSION, Endorsement PI-PRD-144 (01/20) (the "**Biometric Exclusion**"), provides in relevant part as follows:

> The Underwriter shall not be liable under this Part 2 to make any payment for Loss in connection with any Claim made against the Insured:
>
> * * *
>
> Based upon, arising from, or in any way related to Biometric Information and/or any Biometric Information Claim.

71. In addition, under Part 2, Section III, DEFINITIONS, as amended by the Biometric Exclusion, the 2021 Policy provides, in relevant part, as follows:

> Biometric Information means any information used to identify a natural person based on an anatomical scan or any record of biological pattern or characteristic,

14

including but not limited to such natural person's retina or iris scan, fingerprint, voiceprint or any record of hand or face geometry. Biometric Information does not include any information that is protected or regulated pursuant to the Health Insurance Portability and Accountability Act of 1996.

Biometric Information Claim means a Claim brought or maintained against an Insured for a violation of any federal, state or local law that regulates or restricts the collection, storage, use and/or disposal of Biometric Information, including violations of any required notifications, disclosures or authorizations related to such Biometric Information.

72. Each of the complaints filed in the *Abundes* Lawsuit, including the Second Amended Complaint, contain a sole cause of action for violation of the "Illinois Biometric Information Privacy Act."

73. Therefore the *Abundes* Lawsuit is "based upon, arises from, and is in any way related to. . . any information used to identify a natural person based on an anatomical scan or any record of biological pattern or characteristic, including but not limited to such natural person's retina or iris scan, fingerprint, voiceprint or any record of hand or face geometry".

74. In addition, the Second Amended Complaint filed in the *Abundes* Lawsuit is "a Claim brought or maintained against an Insured for a violation of any federal, state or local law that regulates or restricts the collection, storage, use and/or disposal of Biometric Information, including violations of any required notifications, disclosures or authorizations related to such Biometric Information."

75. Consequently, coverage for the *Abundes* Lawsuit would be precluded under the Biometric Exclusion in the 2021 Policy.

76. Defendants, however, deny that Philadelphia has no duty under the 2021 Policy to defend, to advance defense costs or to indemnify any of the Defendants herein in connection with the *Abundes* Lawsuit.

77. An actual controversy exists between the parties and this Court is vested with the

power to declare the rights and liabilities of the parties hereto and to give such other and further relief as it deems necessary under the facts and circumstances.

WHEREFORE, Philadelphia Indemnity Insurance Company respectfully requests this Honorable Court to issue an order:

(a) declaring that Philadelphia has no duty to defend, to advance defense costs or to indemnify any of the defendants in the *Abundes* Lawsuit under the 2021 Policy; and

(b) awarding Philadelphia Indemnity Insurance Company such other and further relief as the Court may deem just and proper.

## COUNT IV – DECLARATORY JUDGMENT UNDER 28 USC § 1331

### (PLED IN THE ALTERNATIVE)

### OTHER TERMS, CONDITIONS AND EXCLUSIONS LIMIT COVERAGE UNDER THE POLICIES IN PART OR IN WHOLE

78. Philadelphia repeats and realleges repeats and realleges Paragraphs 1 to 77 as paragraph 78 as if set forth fully herein.

79. This Count is pled in the alternative.

80. Other terms, conditions and exclusions contained in the Policies may limit or preclude coverage for the *Abundes* Lawsuit in part or in whole. These include:

a. The Policies' definition of "Loss" contained in Part 4, COMMON POLICY DEFINITIONS, Item J.

b. The Policies' definition of "Damages" contained in Part 4, COMMON POLICY DEFINITIONS, Item C.

c. The Policies' Part 6, COMMON POLICY CONDITIONS, Section IV., NOTICE/CLAIM REPORTING PROVISIONS, as amended.

d. The Policies' Part 6, COMMON POLICY CONDITIONS, Section XIX., ALLOCATION.

e. The Policies' INCREASE LIMIT OF LIABILITY AMENDATORY ENDORSEMENT, PI-PRD-39 (09/02).

81. However, the Defendants deny that coverage does not exist in full for the *Abundes* Lawsuit under one or all of the Policies.

82. An actual controversy exists between the parties and this Court is vested with the power to declare the rights and liabilities of the parties hereto and to give such other and further relief as it deems necessary under the facts and circumstances.

WHEREFORE, Philadelphia Indemnity Insurance Company respectfully requests this Honorable Court to issue an order:

(a) declaring that Philadelphia Indemnity Insurance Company has no obligations under the Policies with respect to the *Abundes* Lawsuit; and

(b) awarding Philadelphia Indemnity Insurance Company such other and further relief as the Court may deem just and proper.

> PHILADELPHIA INDEMNITY INSURANCE COMPANY
>
> BY: /s David Grassmick
>
> David Grassmick (ARDC #6277563)
> John C. De Koker III (ARDC# 6292675)
> COPE EHLERS, P.C.
> 221 North Hamlin Ave.
> Park Ridge, IL 60068
> Telephone: 312-549-9280
> Telephone: 312-636-9816 (cell)(working from home with COVID
> dgrassmick@copeehlers.com
> jdekoker@copeehlers.com