IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PHILADELPHIA INDEMNITY INSURANCE CO., | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) Case No. 21 C 4037 |
| LEWIS PRODUCE MARKET NO. 2 INC., LEWIS PRODUCE MARKET, INC., and OSCAR ABUNDES, | ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

On February 1, 2021, Oscar Abundes filed a lawsuit in Illinois state court against Lewis Produce Market, Inc. (Market No. 1), alleging violations of the Illinois Biometric Information Privacy Act (BIPA). Months later, he amended his complaint to name Lewis Produce Market No. 2, Inc. (Market No. 2) as the defendant. Prior to Abundes's lawsuit, Market No. 2 had purchased from Philadelphia Indemnity Insurance Company two liability insurance policies for successive one-year terms starting in 2020 and 2021. After learning of Abundes's lawsuit, Market No. 2 made a claim with Philadelphia Indemnity asking it to defend the company in the lawsuit and cover any losses.

Philadelphia Indemnity now seeks a declaratory judgment that it has no obligation under either the 2020 or 2021 policies to defend or indemnify either Market entity with respect to the Abundes lawsuit. For the reasons set forth below, the Court grants judgment on the pleadings in favor of Philadelphia Indemnity.

### Background

The following summary is derived from the allegations in the plaintiffs' complaint, which the Court takes as true for the purposes of this motion. *See Kanter v. Barr*, 919 F.3d 437, 441 (7th Cir. 2019).

Market No. 1 and Market No. 2 are two separate Illinois corporations, though they have near identical ownership, and both operate in Waukegan, Illinois. Of note, only Market No. 2 has or has had a liability insurance policy with Philadelphia Indemnity. From February 2, 2020, to the end of the day on February 1, 2021 (specifically, until 12:01 a.m. on February 2, 2021), Philadelphia Indemnity insured Market No. 2 under the 2020 policy. Then beginning at 12:01 a.m. on February 2, 2021, the 2021 insurance policy issued by Philadelphia Indemnity to Market No. 2 went into effect. The timing of this transition between policies is critical because the parties agree that the 2021 policy does not provide coverage for lawsuits alleging privacy violations under BIPA; however, the 2020 policy provides such coverage.

On February 1, 2021, Oscar Abundes filed suit on behalf of a class in Illinois state court alleging that Market No. 1 violated BIPA. On February 8, 2021, Market No. 2 first learned of the Abundes lawsuit from its outside counsel via e-mail. (It's possible that the attorney knew of the lawsuit before February 8, but neither side has provided that date.) Market No. 2 then informed Philadelphia Indemnity of the lawsuit on February 19, 2021. Four days later on February 23, counsel for Market No. 2 confirmed in an e-mail to Philadelphia Indemnity that the February 8 e-mail was Market No. 2's "first notice of the claim or potential claim." Compl. ¶ 62 (dkt. no. 1).

On May 14, 2021, Abundes amended his complaint, but he did not change the named defendant. On July 16, 2021, Abundes filed a second amended complaint, this

time naming Market No. 2 as the sole defendant and dropping Market No. 1.

Later in July, Philadelphia Indemnity filed suit in this Court seeking an order declaring that it has no duty to defend, advance defense costs, or indemnify any of the defendants in the Abundes lawsuit under the 2020 and 2021 policies. Both parties have moved for judgment on the pleadings.

## Discussion

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate when there are no disputed issues of material fact and it is clear that the moving party . . . is entitled to judgment as a matter of law." *Unite Here Local 1 v. Hyatt Corp.*, 862 F.3d 588, 595 (7th Cir. 2017). "To survive a motion for judgment on the pleadings (or a motion to dismiss), the complaint must 'state a claim to relief that is plausible on its face.'" *ADM Alliance Nutrition, Inc. v. SGA Pharm Lab, Inc.*, 877 F.3d 742, 746 (7th Cir. 2017). In assessing the motion, a reviewing court is "confined to the matters presented in the pleadings" and "must consider those pleadings in the light most favorable to" the nonmoving party. *Unite Here*, 862 F.3d at 595.

The 2020 policy between Market No. 2 and Philadelphia Indemnity features three key provisions that are relevant to the parties' coverage dispute.

- First, the policy provides that "[t]he Underwriter shall pay on behalf of the Insured, Loss from Claims made against the Insured during the Policy Period." Comp. ¶ 47 (dkt. no. 1).
- Second, the policy defines "claim" to include "a written demand for monetary or non-monetary relief" or "a judicial or civil proceeding commenced by the service

3

      of a complaint or similar pleading." *Id.* ¶ 42.

- Third, the policy specifies that "[a] claim shall be considered made when an Insured first receives notice of the Claim." *Id.*

In sum, so long as Market No. 2 "receive[d] notice" of Abundes's lawsuit during the coverage period, Philadelphia Indemnity was required to cover that lawsuit.

      The linchpin of this case involves the timing of the insured's notice of the claim. The Abundes lawsuit was filed on February 1, 2021, and the 2020 policy terminated at midnight, when the calendar turned to February 2. The complaint alleges, and the defendants do not dispute, that the defendants first received actual notice of the lawsuit on February 8. *Id.* ¶ 62. So although many of the policy's requirements for coverage are clearly satisfied—the lawsuit was filed during the 2020 policy period, Market No. 2 promptly reported the lawsuit to Philadelphia Indemnity, and the 2020 policy covered this sort of legal proceeding involved in the Abundes lawsuit—based on the provisions detailed above, the claim was "considered made" on February 8, when Market No. 2 first received actual notice. February 8 is outside the 2020 policy period, and thus if that is the correct date, Market No. 2 is not entitled to coverage.

      The defendants respond by contending that constructive notice should suffice under the policy to establish when the claim was made *and* that constructive notice existed once the lawsuit was filed, irrespective of when either defendant was served with process or otherwise learned of the lawsuit. In short, the defendants contend that they had constructive notice of the lawsuit on February 1, within the 2020 policy period, because that is the date on which the lawsuit was filed in court.

      The defendants offer several arguments to support this position. First, they

4

argue that the policy "makes no distinction between actual or constructive notice" and that this suggests the latter should suffice.[1] Defs.' Mem. in Supp. of Cross-Mot. for J. on the Pleadings at 5 (dkt. no. 21). The defendants argue next that the lawsuit was a public record no different from a tax deed, proposed ordinance, or trust deed, and several cases support the proposition that "public record [matters] serve as constructive notice to defendants." *Id.* Finally, the defendants contend that requiring actual notice could render coverage "impractical" because a lawsuit filed on the last day of the policy would almost never lead to actual notice before coverage terminates.

      The problem with the defendants' position is that it does not give effect to the policy's plain language. Illinois law requires insurance policies to be construed under general principles of contract interpretation, which requires adhering to the plain meaning of the contract if it is unambiguous. *Standard Mut. Ins. Co. v. Lay*, 2013 IL 114617, ¶ 24, 989 N.E.2d 591, 597. The fact that the policy does not distinguish between constructive and actual notice is not an indication that either suffices; if anything, it suggests the opposite. If constructive notice sufficed, then the filing date of any lawsuit would *always* be the operative date, and the requirement of notice would be inoperative, at least as applied to lawsuits against the insured. In other words, there would be no need to specify that a "claim shall be considered made when an Insured first receives notice" because any lawsuit filed within the policy period would be covered, regardless of when the insured learned of it. The defendants' reading would

---

[1] The defendants do not argue that the term "notice" is ambiguous such that the court should apply the principle of interpreting ambiguous terms in an insurance policy in favor of the insured. *Cf. State Farm Mut. Auto. Ins. Co. v. Elmore*, 2020 IL 125441, ¶ 21, 181 N.E.3d 865, 871 ("The rule that policy provisions limiting an insurer's liability will be construed liberally in favor of coverage applies only if a provision is ambiguous.").

make the "insured first receives notice" provision largely superfluous, contrary to the well-established doctrine under Illinois law providing that "a contract should be interpreted as a whole, giving meaning and effect to each provision." *Bjork v. Draper*, 381 Ill. App. 3d 528, 541, 886 N.E.2d 563, 574 (2008). The Court concludes that the policy means what it says; it requires the insured to "receive" actual notice of the matter giving rise to the claim.

The defendants' other arguments do not compel a different outcome. The cases they cite regarding the connection between constructive notice and public records (e.g., tax deeds, proposed ordinances, trust deeds) did not arise in the context of a claim under an insurance policy. The defendants also do not suggest that some public policy objective should override the insurance policy's clear terms.

The defendants' contention about the difficulties arising from receipt of notice on the final day of coverage is more compelling from a practical standpoint, but this contention must also give way to the contract's plain meaning. Though true that a lawsuit filed late in the afternoon on the final day of policy coverage might never lead to that claim being insured under a policy like Market No. 2's 2020 policy, "if no ambiguity exists the policy will not be interpreted to provide greater coverage than [what] the parties bargained for." *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 151 (7th Cir. 1994) (quoting *Alexander v. Erie Ins. Exch.*, 982 F.2d 1153, 1157 (7th Cir. 1993)).

The cases that the defendants cite to support their impracticality contention also arose in different contexts, making them inapposite. *See New Eng. Envtl. Techs. v. Am. Safety Risk Retention Grp., Inc.,* 738 F. Supp. 2d 249 (D. Mass. 2010); *St. Paul Fire &*

*Marine Ins. Co. v. House*, 315 Md. 328, 554 A.2d 404 (1989). The insurance contract in *New England Environmental Technologies* was a basic "claims made" policy that did not contain a provision further specifying that the insured needed to receive notice. *New Eng. Envtl. Techs.*, 738 F. Supp. 2d at 252. And the issue in *St. Paul Fire & Marine Insurance Co.* was whether Maryland state law overrode a "claims made" policy where the operative date was the day the insured reported the claim to the insurer. *St. Paul Fire & Marine Ins. Co.*, 315 Md. at 330, 554 A.2d at 405. Neither of these cases provides grounds to disregard the language of the 2020 policy.

Because the defendants' entitlement to coverage falls on the issue of notice, the Court need not address the issue of whether the correct party received notice when the original lawsuit named Market No. 1, rather than Market No. 2, as the defendant. Either way, notice came too late for coverage to exist.

## Conclusion

For the foregoing reasons, the Court grants the plaintiff's motion for judgment on the pleadings [dkt. no. 18] and denies the defendant's motion for judgment on the pleadings [dkt. no. 22]. The parties are directed to confer regarding an appropriate form of judgment and are to provide a Word version to the undersigned judge's proposed order e-mail address by April 12, 2022. The case is set for a telephonic status hearing on April 15, 2022, at 9:00 AM, using call-in number 888-684-8852, access code 746-1053. The Court reserves the right to vacate the hearing if it determines a hearing is not needed.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: April 7, 2022